**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVSON**
CASE No. 20-61909-CIV-CANNON/HUNT

EUGENE HWANG,

        Petitioner,

v.

MARK INCH, Secretary,
Florida Department of Corrections

        Respondent.
_____/

## REPORT AND RECOMMENDATION

Eugene Hwang ("Petitioner") has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. His petition attacks the constitutionality of his judgment of conviction in Case No. 12-002440CF10A, Seventeenth Judicial Circuit of Florida, Broward County. This matter was referred to the undersigned by the Honorable Aileen M. Cannon, United States District Judge, for a report and recommendation. ECF No. 10.

The undersigned, having reviewed the Petition, Response and Reply thereto, and the entire record, respectfully recommends that the Petition be **DENIED**.

## Background

The state charged Petitioner with kidnapping and two counts of sexual battery. ECF No. 15-1 at 7.[1] A jury convicted Petitioner on one count of sexual battery, acquitted him on another count of sexual battery, and acquitted him on a kidnapping count. ECF No. 15-1 at 185.

---

1. All page citations for ECF entries refer to the page-stamp number located at the top, right-hand corner of the page.

Petitioner appealed raising three issues: 1) the trial court erred by denying Petitioner's motion to redact Kim Yung's[2] hearsay statements from the recording of the conversation between the victim and Petitioner; 2) the trial court erred by denying Petitioner's Motion for Mistrial after the victim indicated that Petitioner had previously been in trouble with the law; and 3) there were errors on the sentencing scoresheet and in the judgment.

The Fourth District Court of Appeal ("Fourth District") in a written opinion ruled: 1) the trial court did not err in denying Petitioner's motion to redact because the statements were not in fact hearsay; 2) the trial court did not err in denying Petitioner's motion for mistrial on the basis of a fleeting reference to Petitioner's prior driving under the influence ("DUI") conviction; and 3) pursuant to the state's concession, the scoresheet should be corrected to reflect the correct degree of felony, and a statutory citation should also be corrected.  *See Hwang v. State*, 219 So. 3d 67 (Fla. 4th DCA 2017). Petitioner's request for discretionary review of the appellate court's decision was declined by the Florida Supreme Court.

Subsequently, Petitioner filed a Rule 3.850 motion asserting the following claims for relief: 1) trial counsel was ineffective for failing to request a limiting/cautionary instruction with regard to the highly prejudicial out of court statements; 2) trial counsel was ineffective when counsel failed to request an interrogatory on the verdict form for union/contact as to count two; 3) counsel rendered ineffective assistance of counsel

---

2.    Throughout the record and the Parties' pleadings, this person is either referred to as Kim Young or Kim Yung.  For consistency purposes, the undersigned will refer to this person as Kim Yung.

when counsel failed to investigate and call Justine Tablada[3] as a witness; 4) trial counsel rendered ineffective assistance of counsel when counsel failed to file a motion in limine to redact and exclude inadmissible hearsay; 5) trial counsel rendered ineffective assistance of counsel when counsel misadvised Petitioner not to testify; 6) the DNA evidence used against him in this action was inappropriate; and 7) Petitioner was cumulatively deprived of his right to effective assistance of counsel.  ECF No. 15-2.  Petitioner's motion was denied by the trial court.  He appealed and the Fourth District affirmed *per curiam*.  *Hwang v. State*, 288 So. 3d 670 (Fla. 4th DCA 2020).

In this federal proceeding, Petitioner filed a § 2254 petition. ECF No. 1. Respondent filed a response and supporting appendices. ECF Nos. 14–17.  Petitioner replied.  ECF No. 18.  The case is now ripe for review.

## Timeliness

Respondent does not contest the timeliness of the Petition.  Any timeliness issue that may have applied is, therefore, waived.

## Exhaustion

Pursuant to 28 U.S.C.§ 2254(b)-(c), petitioners must exhaust their claims before presenting them in a federal habeas petition.  When petitioners do not properly present their claims to a state court by exhausting those claims and complying with the applicable state procedure, § 2254 may bar federal review of those claims in federal court.  *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (relying upon 28 U.S.C. § 2254(b)-(c)).

---

3. Similar to Kim Yung, Justine Tablada's name is spelled differently—Stallbla—throughout the pleadings.  For the purposes of this Report and Recommendation, the undersigned will refer to her as Tablada.

Petitioner concedes that Ground Five of this petition is not exhausted but asks this Court to nonetheless review the merits of the claim under the exception set forth in *Martinez v. Ryan*, 566 U.S. 1 (2012). Pursuant to *Martinez,* "a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances." 566 U.S. at 14. "The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland*." *Id.* (internal citations omitted). "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* Petitioner argues that the *Martinez* exception applies here because the unexhausted claim could not be raised on direct appeal; he had no post-conviction counsel and the failure to exhaust the claim was because he was ill-equipped to represent himself; the unexhausted claim is a substantial one; and Petitioner suffered prejudice.

As pointed out by Respondent, it is unclear whether the lack of postconviction counsel automatically entitles Petitioner to a review of a procedurally barred claim under the *Martinez* exception. However, assuming *arguendo* that the exception would apply, the undersigned addresses the merits of Petitioner's Ground Five below.

**Standard of Review**

Several limits exist on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

4

The most restrictive limit is that found in § 2254(d). As amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), pursuant to § 2254(d), a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits of the issue was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' federal law if the 'state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 844 (11th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)) (internal brackets omitted). A state court's decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Consalvo*, 664 F.3d at 844 (quoting *Williams*, 529 U.S. at 413). Importantly, AEDPA's deferential standard under § 2254(d) applies only whenever state court proceedings adjudicated a claim on the merits. *See Cullen*, 563 U.S. at 181.

To qualify as an adjudication on the merits, very little is required. In fact, federal courts should presume that § 2254(d)'s deference applies. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state adjudicated the claim on the merits in the absence of any indication or state-law

5

procedural principles to the contrary."). Even where there was a summary denial and no reasons for the denial of relief were articulated by the state trial court, such a ruling is also presumed to be an adjudication on the merits. *Id.* at 100; *see also Gill v. Mecusker*, 633 F.3d 1272, 1288-89 (11th Cir. 2011) (acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference). "The presumption [in favor of a merits ruling existing] may be overcome" only "when there is reason to think some other explanation for the state court's decision is more likely." *Richter*, 562 U.S. at 99–100 (relying upon *Ylst v. Nunnemarker*, 501 U.S. 797, 803 (1991)).

In *Wilson v. Sellers*, 138 S. Ct. 1188, 1192–94 (2018), the Supreme Court held that there is a "look through" presumption in federal habeas corpus law, as silence implies consent. This means federal courts should rely upon the "last related state-court decision" that provides a relevant rationale when the highest state court's adjudication on the merits of a claim is unaccompanied by an explanation. *See id.* at 1192. Put into practice, *Wilson* clarifies the reasoning behind the deference that is presumptively afforded to state courts under § 2254(d).

Federal courts may also deny § 2254 petitions if the claims would fail under *de novo* review, a more favorable standard, as a habeas petitioner would surely not be entitled to a writ under § 2254(d) if their claim would fail under that standard. *See, e.g.*, *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010); *see also Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014). In doing so, federal courts may decline to resolve whether § 2254(d) applies. *See Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1109–10 (11th Cir. 2012).

6

**Evidentiary Hearing**

In this case, the state record provides all pertinent facts, demonstrating an evidentiary hearing in federal court is not needed. *See Schiro v. Landrigan*, 550 U.S. 465, 474 (2007) ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *see also* 28 U.S.C. § 2254(e)(2) (stating federal courts "shall *not* hold an evidentiary hearing" "unless the application shows" circumstances that are inapplicable to the instant Petition) (emphasis added).

**Discussion**

Petitioner raises five grounds for relief.  He first argues that his due process right to a fair trial was denied due to a ruling on a hearsay objection.  Second, Petitioner argues he was denied his Sixth Amendment right to effective assistance of counsel due to his counsel's failure to seek to limit the impact of the alleged hearsay statements. Third, Petitioner argues his counsel was ineffective due to counsel's failure to request a special interrogatory on the verdict form.  Fourth, Petitioner argues his counsel was ineffective for failing to request redactions of references to the statements made by Petitioner's girlfriend during a recorded phone conversation.  Fifth, Petitioner argues counsel was ineffective for failing to investigate and call Petitioner's girlfriend as a defense witness.  Each ground is addressed in order below.

<u>Ground One</u>

In his first count, Petitioner alleges that the trial court violated his federal due process rights and denied him a fair trial when the court denied Petitioner's motion to redact hearsay statements from a recording between Petitioner and the victim.  During

7

the recorded conversation, the victim references statements made by a third person, Kim Yung. Petitioner argues that the statements were improperly admitted because the statements were inadmissible hearsay. In a close, "he said/she said" case such as this one, Petitioner argues, such prejudicial statements unjustly tipped the scales.

Respondent counters that, as the state appellate court held, the statements were not admitted for the truth of the matter asserted; rather, the statements were admitted for the effect on Petitioner, and therefore did not constitute hearsay. Respondent argues that the statements, about which the victim herself seemed unsure, were also introduced to show the victim's own state of mind at the time, as well as to give context to Petitioner's own statements.

Fla. Stat. Ann. § 90.801(1)(b) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Similarly, Fed. R. Evid. 801(c) defines "Hearsay" as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."

The conversation at issue is:

Victim: Well, I mean, if you respected me, then why, why did you try to have to sex with me when I said I didn't want to?
Petitioner: I'm sorry (Inaudible) I was so (Inaudible).
Victim: I'm pretty sure I remember Kim Yung saying not to do it.
Petitioner: (Inaudible).
Victim: So why did you do it, even if your friend told you not to do it and he doesn't even know me? Did you at least use a condom?
Petitioner: No, I wasn't (Inaudible) I never (Inaudible) we didn't do anything (Inaudible) I promise you nothing happened. And nothing happened,
Victim: I promise (Inaudible) cause I knew (Inaudible) try to stop (Inaudible).

8

ECF No. 16-1 at 450.

The trial court entertained argument from counsel regarding Petitioner's objection to the conversation being introduced. The trial court found that the statements made by the victim that refer to what Kim Yung said were not being admitted for the truth of the matter asserted but for the effect they had on Petitioner. The state appellate court affirmed the trial court's ruling.

Upon review of the record, the undersigned finds that the state courts' rulings are neither contrary to nor an unreasonable application of clearly established law, nor was it an unreasonable determination. It was entirely reasonable for the state courts to find that Yung's statements were introduced not for the truth of Yung's words, but instead to demonstrate the effect on Petitioner as well as to put Petitioner's own statements in context. *See McWatters v. State*, 36 So. 3d 613, 638 (Fla. 2010). "When a statement is offered to prove what a person thought after the person heard the statement, it is being offered to prove the person's state of mind and is not hearsay." *Jenkins v. State,* 189 So. 3d 866 (Fla. 4th DCA 2015). As the courts found, the victim's statements regarding her memories of the circumstances surrounding the incident situate Petitioner's own statements in context. Whether Yung's statements were truthful is immaterial.

Further, this conversation was cumulative to other evidence that *was* admitted for substantive purposes. Specifically, in a different conversation between the victim and Petitioner, Petitioner mentioned the same statements made by Kim Yung, and these admissions were admitted into evidence for substantive purposes. Thus, the statements both were not hearsay and were cumulative to other evidence that was entered for substantive purposes.

9

Accordingly, the undersigned recommends that Petitioner's request for habeas corpus relief as to Ground One be DENIED.

Ground Two

In his second ground, Petitioner argues that he was denied his Sixth Amendment right to effective assistance of counsel when his counsel failed to request a limiting or cautionary instruction with respect to the alleged hearsay statements referenced in Ground One. Petitioner contends that the comments were prevalent throughout the trial and required a curative instruction to eliminate the prejudicial effect the statements had. Accordingly, Petitioner argues that his counsel had a duty to ensure that the jury considered the statements made by Kim Yung only for their limited purpose, the reaction of Petitioner, and not for the truth of the matter asserted.

Respondent argues that Petitioner has not shown any deficiency on behalf of his counsel or shown that he suffered any prejudice in the outcome of his case in regard to this claim. Respondent contends that a request for a jury instruction would only have caused confusion among the jury as the statements were simply cumulative to other properly admitted evidence.

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. Amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable

probability that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An ineffective assistance of counsel claim may be raised with respect to errors made by trial counsel or direct appeal counsel, and both are governed by *Strickland*. *See, e.g.*, *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016).

The deficiency prong is met if no competent counsel would have taken the action that counsel took during the proceedings. *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). The prejudice prong is met if, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been favorable to the defendant. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. The error must also be "so serious" that the error "deprive[d] the defendant of a fair trial, a trial whose result is reliable[,]" in order to satisfy the prejudice prong. *Strickland*, 466 U.S. at 687.

Applying *Strickland* to the instant action, to succeed on this ground, Petitioner must show that no competent counsel would have failed to request a limiting instruction, and but for that action, there is a reasonable probability that the outcome of the trial would have been favorable to him. The undersigned finds that Petitioner has not met either prong.

The State presented multiple audio recordings at trial. The audio recording at issue here was a conversation between the victim and Petitioner. In this recording, the

victim told Petitioner, "I'm pretty sure I remember Kim Yung saying not to do it" and asked "[s]o why did you do it?" ECF No. 16-1 at 501. The court allowed these statements, over objection, not for the truth of the matter asserted but rather for the effect the statements had on Petitioner. Petitioner alleges that counsel was deficient for not requesting a limiting instruction.

First, as outlined above, these statements were not hearsay and were cumulative to other properly admitted substantive evidence, such as Petitioner's own statements. In fact, Petitioner himself stated that he "took a beating from Kim Yung after that night" and himself made similar statements regarding Kim Yung. *Id*. In response to the victim's next question "he told you not to do it?" Petitioner stated "[n]o, he didn't tell me not to do it, he just said I don't want to do it, you know." *Id.*

As Petitioner notes, these statements were prevalent throughout the trial. What Petitioner fails to acknowledge is that these statements were prevalent throughout the trial in different forms. In one form, the statements were entered to show the effect on Petitioner. In another form, the statements were substantive because the statements were Petitioner's own admissions.

Petitioner cannot show that counsel's actions were deficient. Indeed, it is strategically reasonable that Petitioner's counsel did not want to further draw attention to Kim Yung's statements and chose not to request a limiting instruction. In the same vein, Petitioner cannot show that there is a reasonable probability that the outcome of the trial would have been favorable to him if the court issued a limiting instruction with respect to the victim's statements regarding Kim Yung, when Petitioner's admissions

12

introduced the same statements. As a result, Petitioner was not prejudiced by the lack of a curative instruction.

Therefore, the undersigned recommends that Petitioner's request for relief be DENIED as to Ground Two.

Ground Three

In his third ground, Petitioner argues that he was denied his Sixth Amendment right to effective assistance of counsel when his counsel failed to request a special interrogatory on the verdict form for Count Two. That count charged Petitioner with sexual battery by the act of penetrating or uniting with the victim's vagina. However, Petitioner contends that the verdict form did not give the jury the opportunity to find Petitioner guilty by union, as opposed to penetration. This is a critical error, according to Petitioner, because if the jury found that only union, and not penetration, occurred, Petitioner's sentencing score sheet would have been reduced by 40 points.

Respondent contends that Petitioner's counsel was not deficient in failing to request a special interrogatory, nor did Petitioner suffer any prejudice due to the lack of a special interrogatory. Respondent argues that the trial court instructed the jury on the elements of sexual battery that the state had to prove beyond a reasonable doubt. Further, Respondent states that the verdict form contained a special interrogatory asking the jury whether penetration occurred. Therefore, Respondent asserts that the jury specifically found that penetration occurred, which added 40 points to Petitioner's score sheet. Respondent maintains that had the jury not found that penetration occurred, then it would not have answered yes to the interrogatory, and the 40 additional points would not have been added to Petitioner's score sheet.

The trial court instructed the jury that: to prove the crime of sexual battery upon a person twelve years of age or older, the State must prove the following three elements beyond a reasonable doubt: 1) the victim was twelve years of age or older; 2) Petitioner committed an act upon the victim in which the sexual organ of the Petitioner penetrated or had union with the vagina of the victim; and 3) the act was committed without the consent of victim. ECF No. 16-1 at 958–59.

Here, the undersigned finds that Petitioner again fails to establish either that his counsel's performance was deficient or that he suffered any prejudice. The instruction for the crime of sexual battery informs the jury that the state must prove, among other elements, that Petitioner's sexual organ penetrated or had union with the vagina of the victim. The jury found that Petitioner was guilty of this crime. Additionally, via the special interrogatory, the jury further found that Petitioner was guilty of this crime by penetration. As stated above, there were two distinct ways the jury could find Petitioner guilty – by union or by penetration. Put differently, after the jury found him guilty of the umbrella crime of sexual battery, it was specifically asked whether the battery occurred by penetration. This was a simple, binary inquiry. Had the jury said no, which it clearly could have done, then Petitioner would have been guilty of only union.

Petitioner's argument is ultimately speculative. Petitioner appears to be arguing that the union option must have been specifically mentioned in the special interrogatory itself for the jury to understand that such a finding was an option. This was not necessary. The jury knew the crime could have been committed either by union or penetration. The jury was asked to determine whether penetration occurred. It did so. The undersigned finds the jury had adequate information to answer the interrogatory.

14

Nothing more was required. Accordingly, Petitioner's counsel was not ineffective, and Ground Three could be denied on this alone.

Additionally, the record plainly supported a finding of sexual battery via penetration. Petitioner told the victim that he did not stop when she asked him to because he was trying to seduce her. He also admitted that he did not keep his penis inside her vagina for "that long . . . not even five minutes." ECF No. 16-1 at 529. Further, even if the verdict form did not allow the jury to choose between penetration or union as charged, Florida courts have held that "[w]hen sentencing for a sexual offense, these are the types of facts judges have traditionally taken into consideration, even though they might come from observations at a trial or from a presentence investigation." *Jones v.* State, 127 So. 3d 622, 625–26 (Fla. 4th DCA 2013) (quoting *Neira v. State*, 847 So.2d 1134, 1136 (Fla. 4th DCA 2003)). Even in the absence of a specific finding by the jury, the sentencing judge could have added the 40 points based on the evidence presented at trial. Accordingly, Petitioner was not prejudiced by the lack of a more specific special interrogatory, offering further justification for the denial of this ground.

Thus, the undersigned recommends that Petitioner's request for relief be DENIED as to Ground Three.

Ground Four

In his fourth ground, Petitioner claims that his counsel was ineffective for failing to file a motion in limine to redact any references to the statements made by Petitioner's girlfriend, Justine Tablada, from a recording of a phone conversation between the victim and Petitioner because the statements qualified as inadmissible hearsay. Petitioner

15

alleges that the testimony was introduced in an attempt to prove that Petitioner admitted committing sexual battery and to establish Petitioner's guilt through hearsay. As a result of the hearsay being admitted, due in part to Petitioner's counsel's ineffectiveness, Petitioner contends that the jury considered the statements as substantive evidence of Petitioner's guilt, which unfairly tipped the scales in the favor of the State.

Respondent contends that the record demonstrates that the victim's statements about what Tablada said were introduced for their effect on Petitioner and for Petitioner's reaction, not for the truth of the matter asserted. Further, Respondent argues that in the audio recording, some of the victim's statements that referenced what Tablada said were in response to questions asked by Petitioner. Thus, Respondent asserts that Petitioner has not established a true deficiency on the part of counsel because the statements did not qualify as hearsay. Respondent also argues that Petitioner has not established prejudice because there was overwhelming evidence of Petitioner's guilt. As previously mentioned, in other recordings produced by Respondent, Petitioner himself admitted that he took advantage of the victim. Additionally, there was video evidence of the assault in which the victim could be heard telling Petitioner to stop. Therefore, Respondent contends that there is no reasonable likelihood the outcome of the trial would have been different.

The undersigned agrees with Respondent. Upon review of the testimony, the undersigned finds that, similar to Kim Yung's statements discussed above, Justine Tablada's statements relayed by the victim were admitted for their effect on Petitioner and his reactions to the statements. Further, some of the statements referenced by the

victim were in response to questions asked by Petitioner. Most problematic for Petitioner, however, is that he repeated many of the statements himself. ECF No. 16-1 at 458. As Petitioner's own statements would certainly be admissible, any potential harm is obviated.

Put simply, as in Grounds One and Two, Petitioner has not met his burden to attain relief. Accordingly, the undersigned finds that Petitioner has not established a deficiency based on his trial counsel's failure to make a motion in limine to exclude the alleged hearsay testimony. Likewise, even were such a motion required, Petitioner has not established that he suffered any prejudice. Therefore, the undersigned recommends that Petitioner's request for habeas relief be DENIED as to Ground Four.

Ground Five

In his fifth and final ground, Petitioner claims that his counsel was ineffective for failing to investigate and call Justine Tablada, Petitioner's girlfriend, as a defense witness. The undersigned has already discussed that the Parties agree that Petitioner did not exhaust available remedies before advancing this claim. Nevertheless, the undersigned will address the merits of the claim.

On the merits, Petitioner argues that his counsel was notified that Tablada was available and willing to testify as to her friendship with the victim and about conversations concerning the alleged incident. Petitioner asserts that Tablada's testimony would have cast doubt upon and contradicted the victim's testimony. Specifically, Petitioner argues that Tablada would have testified that the victim's testimony and statements that she was a lesbian are false and inaccurate. ECF No. 1 at 37. Petitioner contends that doubt over the victim's testimony would have made a

17

difference at trial in this action, which Petitioner characterizes as a close "he said/she said" scenario.

The "burden is particularly 'heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative.'" *McKiver v. Sec'y Fla. Dept. of Corrections,* 991 F.3d 1357, 1365 (11th Cir. 2021) (quoting *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006)). "Claims that counsel failed to call witnesses are not favored on federal habeas review because . . . speculation about what witnesses would have said on the stand is too uncertain." *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010). For that reason, courts have "held that a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness." *McKiver*, 991 F.3d at 1365–66 (citation omitted).

Here, the undersigned agrees that how a witness would have testified is largely speculative, especially in this case, where Petitioner has provided no affidavit or testimony consistent with what he now proposes Tablada would have said. *See Sanders v. Trickey,* 875 F.2d 205, 210 (8th Cir. 1989) ("Appellant's claim also must fail because he has not shown how he was prejudiced" because he "produced no affidavit or testimony from [the witness] to the effect that she would have testified at trial that appellant was innocent.").

Further, the undersigned finds that some of the alleged potential testimony—for example, that the victim was not a lesbian—would not qualify as material even for impeachment purposes. The victim's sexual orientation is irrelevant. It would in no way

18

discount or discredit Petitioner's own statements that he assaulted the victim. Nor would the testimony discredit the video of the assault, in which the victim can be heard telling Petitioner to stop.

Here again, Petitioner's argument is severely undermined by the weight of the properly admitted, unobjectionable evidence against Petitioner. Although Petitioner claims that this trial was a close "he said/she said" scenario, that contention is amply refuted by the record. Not only has Petitioner failed, on every count, to demonstrate error, he has also at no point shown that any potential error would have resulted in a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.

For these reasons, the undersigned recommends that Ground Five should be denied.

## Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell,* 556 U.S. 180 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right

and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* After careful consideration of the record, the undersigned recommends that the District Court should not issue a certificate of appealability.

## **RECOMMENDATION**

Based upon the foregoing, the undersigned hereby RECOMMENDS that Movant's § 2254 Motion be DENIED.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE and SUBMITTED** at Fort Lauderdale, Florida, this 7th day of September 2023.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Honorable Aileen M. Cannon

All Counsel of Record